UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JAIME VARELA and | § | |
| YESICA WIEGERT, individually and | § | |
| on behalf of similarly situated | § | |
| individuals, | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:13-CV-1278-B |
| | § | |
| DAVID BENITEZ GONZALES, ANA | § | |
| CRISTINA BENITEZ, INTELLIGENT | § | |
| MEXICAN MARKETING, INC., and | § | |
| MARKETING AND INVENTORY | § | |
| MANAGEMENT, LLC, | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Jaime Varela ("Varela") and Yesica Wiegert ("Wiegert") (together "Plaintiffs")

brought this action on behalf of themselves and other similarly situated individuals against

Defendants Intelligent Mexican Marketing, Inc. ("IMM"), Marketing and Inventory Management,

LLC ("MIM"), David Benitez Gonzales ("Benitez"), and Ana Cristina Benitez ("Cristina")

(collectively "Defendants"). Plaintiffs allege in their First Amended Complaint[1] (the "Complaint")

that they were paid depressed wages while employed by Defendants as a result of Defendants' illegal

---

[1] This is the first opportunity the Court has had to review Plaintiffs' allegations, because
Defendants' first Motion to Dismiss (doc. 16) was rendered moot after Plaintiffs' Unopposed Motion to
Amend their Original Complaint was granted (docs. 19).

- 1 -

worker[2] hiring scheme. They further assert that Defendants, through their scheme, violated and conspired to violate the Racketeering Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. 18 U.S.C. §§ 1962(c) and (d).

Now before the Court is the Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint ("Motion"), filed pursuant to FED. R. CIV. P. 12(b)(6), moving the Court to dismiss the Complaint on a number of grounds. (doc. 22). Finding that the allegations supporting Plaintiffs' RICO and RICO conspiracy claims are inadequate to establish Plaintiffs' standing to sue under RICO, the Court **GRANTS** the Motion and **DISMISSES WITHOUT PREJUDICE** Plaintiffs' Complaint.

## I.

## BACKGROUND

A.    *Factual Background* [3]

IMM and MIM are Texas-based companies in the "business marketing, advertising, and consulting services for companies in the USA Hispanic Market." Am. Compl. ("Compl.") ¶ 12. While IMM and MIM are separate entities, they operate as a joint unit ("IMM/MIM"), sharing "employee, staff, and payroll obligations." *Id.* ¶¶ 12–13. Their respective leaders, Defendants Benitez (IMM President) and Cristina (MIM President), "jointly" run IMM/MIM as a single unit. *Id.* ¶ 13. Defendants have operated in this manner for "several years." *Id.* ¶ 14.

---

[2] The Court uses "illegal workers" to denote workers who unlawfully entered the United States. The Plaintiffs and Defendants use the terms "undocumented workers" and "illegal aliens" to refer to these same workers. For clarity of reference, the Court will use the term "illegal workers" where possible.

[3] The following factual account is drawn from the Complaint and assumed to be true for purposes of resolving the Motion. *See Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).

Plaintiffs were employed at IMM/MIM from 2011 until the summer of 2012. *Id.* ¶¶ 9, 15. Varela worked as a sales representative where she "was tasked with delivering products to the stores and negotiating more product sales with the stores." *Id.* ¶ 16. Wiegert, on the other hand, was a merchandiser, a position in which she "functioned as a sales representative, supervisor, and manager" while overseeing sales to four hundred stores and actively negotiating with new stores. *Id.* ¶¶ 20, 21. For compensation, Varela was paid a base salary and earned a 4–6% sales commission while Wiegert was paid just a base salary. *Id.* ¶¶ 17, 18, 22. In total, Plaintiffs were paid between $26,000 and $46,000 a year while working for IMM/MIM.[4] *Id.* ¶ 23.

Over an unspecified period of time, Defendants hired and used illegal workers in positions similar to the Plaintiffs. Specifically, Defendants employed illegal workers "as supervisors, sales representatives, and in the warehouse." *Id.* ¶ 25. Defendants carried out this scheme through their participation in "all hiring decisions," including setting hiring policies, making hiring decisions, reviewing identity and employment authorization documents, background checks, visa applications, and recruiting. *Id.* ¶¶ 26–30, 32, 33. Defendants also traveled to Mexico with the purpose of hiring new employees, told undocumented employees they desired more workers from Mexico, and hired legal workers for the express purpose of driving illegal workers around. *Id.* ¶¶ 28–30, 33–35.

B.    *Procedural Background*

After leaving IMM/MIM, Plaintiffs filed a Complaint against the Defendants on behalf of themselves and other similarly situated employees who worked for IMM/MIM over the past four years. The Complaint asserts that the Defendants' illegal-worker-employing enterprise violated

---

[4] The Complaint does not clarify how much Wiegert or Varela were each specifically paid, or whether this $24,000 to $46,000 range includes the earnings Varela procured through her commission.

RICO, 18 U.S.C. § 1962(c). It also asserts a claim under 18 U.S.C. § 1962(d) for Defendants' alleged conspiracy to violate § 1962(c) of RICO. Plaintiffs allege that because of Defendants' violation and conspiracy to violate RICO, they were paid "substantially less than the market rate for their services." *Id.* ¶ 23. In other words, Plaintiffs maintain that the Defendants' unlawful use of illegal workers allowed Defendants to increase the pool of available workers, thereby depressing Plaintiffs' wages as the demand for their services fell. *Id.* ¶ 45. In relief, Plaintiffs seek treble, punitive, and compensatory damages along with attorney's fees. (doc. 22).

Defendants now move for dismissal of the Complaint under FED. R. CIV. P. 12(b)(6), maintaining that the allegations in the ten-page Complaint fail to state a RICO violation or sustain a RICO conspiracy claim and, further, that the allegations fail to establish that the Defendants' RICO violations were the proximate cause of the Plaintiffs' alleged injuries, an essential requirement for standing to sue under RICO. The applicable legal standards follow.

## II.

## LEGAL STANDARD

A.      *Rule 12(b)(6) Standard for Motion to Dismiss*

FED. R. CIV. P. 12(b)(6) authorizes dismissal of a complaint that fails to state a claim upon which relief can be granted. In ruling on a Rule 12(b)(6) motion, the Court may generally "rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[5] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635

---

[5] Since the expert report contained in Plaintiffs' Appendix filed in support of its Brief in Opposition to Defendants' Motion (doc. 30) does not meet any of this criteria, the Court declines to consider it in its analysis.

F.3d 757, 763 (5th Cir. 2011);*Scanlan v. Texas A&M Univeristy*, 343 F.3d 533, 536 (5th Cir. 2003). In examining the pleadings, the Court accepts "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K Eby Constr. Co. V. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible pleading contains "enough facts to raise a reasonable expectation that discovery will reveal evidence of the claim or element." *Kopp v. Klein*, 722 F.3d 327, 333 (5th Cir. 2013). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. A complaint containing nothing more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). If the allegations raise no entitlement to relief, "this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuviller v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Tombly*, 550 U.S. at 557).

B.    *Rule 9(b)'s Heightened Pleading Requirements Do Not Apply*

The parties disagree over whether FED. R. CIV. P. 9(b)'s heightened pleading requirements apply. The Defendants contend that the Amended Complaint contains certain allegations "sounding

in fraud" that warrant Rule 9(b)'s application.[6] Specifically, Defendants argue that one of Plaintiffs'

allegations—"the falsifying of identification documents unlawfully expands the labor pool, which

depresses Plaintiffs' wages," Compl. ¶ 24 —lends support for a RICO predicate act—fraud and

misuse of visas, permits and other documents under 18 U.S.C. § 1546—that warrants Rule 9(b)'s

application. Although Defendants concede this particular RICO predicate is not alleged, they argue

for Rule 9(b)'s application to the extent Plaintiffs' RICO predicates rely on this allegation.

    Generally, a plaintiff is only required, under Rule 8(a), to provide "a short and plain

statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). Rule 9(b)

offers a heightened standard, requiring a party to "state with particularity the circumstances"

surrounding its allegations. FED. R. CIV. P. 9(b). However, Rule 9(b) is only applicable when a party

is "alleging fraud or mistake." *Id.* This includes "RICO claims resting on allegations of fraud,"

*Williams v. WMX Technologies, Inc.,* 112 F.3d 175, 177 (5th Cir. 1997), such as when the RICO

predicate act alleged involves wire or mail fraud. *See, e.g., Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.,* 975

F.2d 1134 (5th Cir. 1992). But where the "racketeering activity does not involve fraud," Rule 9(b)

does not apply. *Rolls-Royce Corp. v. Heros, Inc.,* 576 F. Supp. 2d 765, 777 (N.D. Tex. 2008) (finding

Rule 9(b) does not apply to RICO claims involving "interstate transportation of stolen property").

    Here, the *claims* themselves do not involve fraud. Plaintiffs' RICO claims are based on

allegations of unlawful transporting, harboring, encouraging, and hiring of illegal workers. Just as

"multiple courts" have found, this Court concludes that Rule 8(a)'s pleading requirements apply in

---

[6] Defendants also argue for dismissal of the Complaint for Plaintiffs' failure to "provide sufficient facts to determine whether they allege RICO violations" that warrant Rule 9(b)'s application. Def.'s Mot. 3. However, the Court cannot dismiss Plaintiffs' claim simply because it did not present a clear set of facts for the Court to analyze and determine whether Rule 9(b) applies.

these circumstances, where the "'RICO action involv[es] non-fraud, immigration offenses as predicate activities.'" *Cunningham v. Offshore Specialty Fabrications, Inc.*, 543 F. Supp. 2d 614, 627 (E.D. Tex. 2008) (quoting *Trollinger v. Tyson Foods, Inc.*, No. 02-cv-23, 2007 WL 1574275, at *4–5 (E.D. Tenn. May 29, 2007).

Nonetheless, there is one allegation—Defendants falsified identification documents—that arguably involves fraudulent conduct. However, Plaintiffs' Response to Defendants' Motion never once mention this allegation, and the RICO claims do not appear to be grounded in this fact. In these circumstances, the Fifth Circuit instructs courts to consider the sufficiency of the complaint under Rule 8(a) without regard to the fraudulent allegation. *See Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001) ("Where averments of fraud are made in a claim in which fraud is not an element, an inadequate averment of fraud does not mean that no claim has been stated. The proper route is to disregard averments of fraud not meeting Rule 9(b)'s standard and then ask whether a claim has been stated."). Accordingly, the Court disregards Plaintiffs' single unsupported fraud allegation and analyzes the Complaint under Rule 8(a)'s pleading standards.

C.      RICO

The Racketeer Influence and Corrupt Organization Act ("RICO"), originally passed to target mobsters and organized crime, has been interpreted to reach even "respected and legitimate" businesses that violate the Act's prohibitions. *Sedima v. Imrex Co., Inc.*, 473 U.S. 479, 499 (1985). "To establish a prima facie civil RICO claim, a plaintiff must allege: (1) a substantive predicate violation of 18 U.S.C. § 1962; (2) injury to his business or property; and (3) a causal connection between the racketeering activity and the injury." *Simpson v. Sanderson Farms, Inc.*, No. 12-cv-28, 2012 WL 4049435 at *3 (M.D. Ga. Sept. 13, 2012) (citing *Avigan v. Hull*, 932 F.2d 1572, 1577

- 7 -

(11th Cir. 1991). At issue in this Motion are the first and third prongs.

To establish the first prong—a § 1962 violation—a plaintiff must adequately plead "three common elements: (1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise." *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007) (quotation marks omitted). At issue here are the second and third elements.[7] A "pattern of racketeering activity" at minimum requires "at least two acts of racketeering activity."[8] 18 U.S.C. § 1961(5). "Racketeering activity"—commonly referred to as a RICO predicate act—is any act listed in 18 U.S.C. § 1961(1), including an "act which is indictable under the Immigration and Nationality Act. . .[if] committed for the purpose of financial gain." 18 U.S.C. § 1961(1)(F). RICO defines an "enterprise" as including "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *Id.* 18 U.S.C. § 1961(4).

Next, civil RICO plaintiffs must establish that they "suffered injuries 'by reason of'" the defendant's violation of § 1962. *Ocean Energy II, Inc. v. Alexander & Alexander, Inc.*, 868 F.2d 740, 746 (5th Cir. 1989) (quoting 18 U.S.C. § 1964(c)). Often referred to as the RICO standing requirement, plaintiffs must establish their "right to sue" by pleading facts showing defendant's violation of § 1962 was both a "but for" and "proximate cause" of their injuries. *Holmes v. Sec. Investor Protection Corp.*, 503 U.S. 258, 268 (1992).

---

[7] Individually-named defendants Gonzales and Benitez are "persons" separate and apart from the enterprise of IMM/MIM. Therefore, the first element is not at issue.

[8] While the Supreme Court has explained that RICO's definition of "pattern" is only a minimal requirement, *H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 238 (1989), Defendants do not directly challenge the existence of a "pattern" in this case. Thus, the more important issue for this Motion is what constitutes racketeering activity, i.e. a RICO predicate act.

# III.

# ANALYSIS

In support of their civil RICO claims, Plaintiffs allege that Defendants engaged in and conspired to engage in a pattern of racketeering activity (illegal worker use and hiring) connected to the conduct of an enterprise (IMM/MIM) that caused Plaintiffs harm (depressed wages). Plaintiffs allege Defendants committed four RICO predicate acts that qualify under 18 U.S.C. § 1961(1) as "act[s] which [are] indictable under the Immigration and Nationality Act. . .committed for the purpose of financial gain"[9]: 8 U.S.C. § 1324(a)(1)(A)(ii) (the "RICO transporting predicate"), 8 U.S.C. § 1324(a)(1)(A)(iii) (the "RICO harboring predicate"), 8 U.S.C. § 1324(a)(1)(A)(iii) (the "RICO encourage/induce predicate"), and 8 U.S.C. § 1324(a)(3)(A) (the "RICO hiring predicate").

In their Motion, Defendants point to four pleading deficiencies in the Complaint. First, the Defendants argue that the Complaint fails to adequately plead an enterprise. Second, the Defendants attack the sufficiency of the allegations supporting each of the four RICO predicate acts. Third, Defendants similarly challenge the sufficiency of the allegations supporting the RICO conspiracy claim. Finally, Defendants contend that the Complaint fails to establish proximate causation, and therefore Plaintiffs do not have standing to assert their RICO claims. The Court will address each of these contentions in turn.

A.    *RICO Enterprise*

In general, "a RICO enterprise can be either a legal entity or an association-in-fact." *St. Paul*

---

[9] Though Defendants contend the Complaint does not assert Plaintiffs committed the RICO predicate acts for financial gain, the Complaint states that "[p]aying unlawfully depressed wages to employees causes financial gain to Defendants." Compl. ¶ 46.

*Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 440 (5th Cir. 2000). An association-in-fact enterprise has three elements: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009).

Plaintiffs allege that the joint organization of IMM/MIM qualifies as an "enterprise" under RICO, because it forms an association-in-fact.[10] Defendants argue that IMM/MIM does not qualify as an association-in-fact enterprise because Plaintiffs' vague allegations fail to show IMM/MIM has existed for a sufficient duration. Defendants point to allegations that Defendants "currently operate" as a joint organization "and have done so for several years." Def.'s Mot. 7 (quoting Compl. ¶ 14). Despite the vague time periods alleged, the Court finds the Complaint contains sufficient facts to satisfy the relatively low burden of establishing an association-in-fact.

To establish the longevity element of an association-in-fact enterprise, the entity must be one of "sufficient duration to permit an associate to participate in [the enterprise's] affairs through a pattern of racketeering activity." *Boyle*, 556 U.S. at 946. The organization must also be "ongoing" and "function as a continuing unit over time." *St. Paul Mercury Ins. Co.*, 224 F.3d at 441. The longevity requirement is merely in place to ensure "that the relationships persist long enough to accomplish the purpose of the enterprise." *Browning v. Flexsteel Indus., Inc.*, No. 11-cv-480, 2013 WL 3224593 at *9 (N.D. Ind. June 25, 2013) (quotation marks omitted).

Here, Plaintiffs allege that IMM and MIM "share employees, staff, and payroll obligations"

---

[10] While Plaintiffs correctly note that MIM and IMM also qualify as enterprises individually, all the allegations in the Complaint simply lump MIM and IMM together. Fortunately, untangling the allegations as they relate to each enterprise is unnecessary, since the Court finds that IMM/MIM collectively form an enterprise.

to achieve a common purpose, and that they have operated in this manner for "several years." Compl. ¶ 13-14. Several years is sufficient time for the "associate[s] to participate in. . .[the] pattern of racketeering activity" alleged in this case. *Boyle*, 556 U.S. at 946. Furthermore, even though the Complaint does not specifically use the words "continuous," there is no indication that this organization—which shared employees, staff, payroll obligations, and two presidents running the joint operation—could or did cease operating as an entity at any time during the "several years" it has been in operation. Accordingly, the Court finds that Plaintiffs have sufficiently pled a RICO enterprise by alleging an association-in-fact between MIM and IMM.

B.    *RICO Predicate Acts*

As discussed before, the Complaint contains four RICO predicate acts, each of which qualifies as an "act which is indictable under the Immigration and Nationality Act." 18 U.S.C. § 1961(1)(F). Defendants challenge the sufficiency of the allegations supporting each predicate act. For the reasons that follow, the Court finds that two of the four RICO predicate acts—the RICO encouraging/inducing predicate and the RICO hiring predicate—fall short of their pleading mark.

1.    RICO Transporting Predicate: 8 U.S.C. § 1324(a)(1)(A)(ii)

To establish the RICO transporting predicate, Plaintiffs must show that "(1) an alien entered or remained in the United States in violation of the law, (2) [Defendants] transported the alien within the United States with intent to further the alien's unlawful presence, and (3) [Defendants] knew or recklessly disregarded the fact that the alien was in the country in violation of the law." *United States v. Nolasco-Rosas*, 286 F.3d 762, 765 (5th Cir. 2002).

Defendants take issue with the first and third elements of the RICO transporting predicate.[11] Defendants first point out that Plaintiffs fails to allege that the "undocumented aliens" referred to in the Complaint "entered into the United States in violation of federal law." Def's Mot. 13. As to the third element, the Defendants assert that the Complaint contains "no facts establishing that Defendants knew or were in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of the law." *Id.* 14. The Court finds no merit in either of these arguments at this stage in the proceedings.

Upon review, the Court concludes that the Complaint contains sufficient factual allegations for "the court to draw the reasonable *inferences*" necessary to establish each of the two elements at issue here. *Iqbal*, 556 U.S. at 678 (emphasis added). First, it is true that Plaintiffs reference "undocumented aliens" and "undocumented workers" at times, but the Complaint also refers to "illegal aliens" and "illegal workers" throughout. *See, e.g.*, Compl. ¶¶ 2, 24, 28–31, 34–35. This element will have to be proven later in the proceedings, but for now, the Court concludes that simply alleging the workers were "illegal aliens" and "illegal workers"is sufficient to establish this simple, straightforward alleged fact.

Next, on the third element, the Plaintiffs' conclusory allegations that the Defendants knew or recklessly disregarded the illegal status of workers are supplemented by more specific allegations, including: that the Defendants were directly involved in the hiring and recruiting process; that they reviewed employment-related documents; that they failed to check employees' social security

---

[11] Since these two elements at issue are also elements for some of the other three RICO predicate acts alleged, the findings here for the RICO transporting predicate apply equally to the other relevant predicate acts alleged.

numbers; and that they accepted Mexican driver licenses as proof of identity. *Id.* ¶¶ 26, 29, 34, 35. These allegations in the context of the Complaint as a whole present a plausible theory that the Defendants were in a position to know or recklessly disregard the status of their workers. If shown to be true, these facts would arguably suffice as circumstantial proof of this element. *See United States v. De Jesus-Batres*, 410 F.3d 154, 161 (5th Cir. 2005) ("Circumstantial evidence alone can establish a defendant's knowledge or reckless disregard that [the workers] are illegally in the country."). Drawing all reasonable inferences in Plaintiffs' favor, as it must, the Court concludes that Plaintiffs' have plausibly plead that the Defendants knew or recklessly disregarded their workers' illegal status.

2.    RICO Harboring Predicate: 8 U.S.C. § 1324(a)(1)(A)(iii)

The RICO harboring predicate prohibits persons from:

> knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, such alien in any place, including any building or any means of transportation[.]

8 U.S.C. § 1324(a)(1)(A)(iii).

Defendants argue that Plaintiffs fail to allege facts showing that Defendants concealed, harbored or sheltered illegal workers. Plaintiffs' primary support here is the allegation that "Defendants have hired legal workers expressly to transport illegal workers," Compl. ¶ 30, and in the next paragraph: "This practice also harbors, conceals, and shields the illegal aliens from detection." *Id.* ¶ 31. Defendants argue that these allegations are insufficient because they fails to explain "*how* Defendants' lawful conduct" amounts to harboring, concealing, or shielding illegal aliens from detection. Def.'s Mot. 14 (emphasis in original). Even though Plaintiffs do little to clarify how its

- 13 -

supporting allegations amount to harboring,[12] the Court can reasonably infer from the Complaint that Defendants violated the RICO harboring predicate.

The Fifth Circuit has "interpreted the statutory phrase 'harbor, shield, or conceal' to imply that 'something is being hidden from detection.'" *Villas at Parkside Partners v. City of Farmers Branch*, No. 10-10751, 2013 WL 3791664, at *4 (5th Cir. July 22, 2013) (quoting *United States v. Varkonyi*, 645 F.2d 453, 459 (5th Cir. 1981)). Here, Plaintiffs' allegations that Defendants hire illegal workers and then hire legal workers to drive them around and avoid detection are enough to establish that Defendants harbored illegal workers. To illustrate, illegal workers hired as sales representative would be "tasked with delivering products to the stores and negotiating more product sales with the stores," Compl. ¶ 15, which puts them in a position to be detected by authorities, especially since "the illegal workers do not have valid drivers licenses." *Id.* ¶ 30. The Defendants' alleged hiring of legal workers to drive illegal workers around, therefore, "shields the illegal aliens from detection." *Id.* ¶ 31. While the Complaint could be more explicit, its factual allegations are plausible enough for the Court to reasonably infer Defendants violated the RICO harboring predicate.

3.      RICO Encourage/Induce Predicate: 8 U.S.C. § 1324(a)(1)(A)(iv)

The RICO encourages/Induces predicate is governed by 8 U.S.C. § 1324(a)(1)(A)(iv), which makes it a crime for any person who:

> encourages or induces an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law;

8 U.S.C. § 1324(a)(1)(A)(iv).

---

[12] Plaintiffs simply point out which allegations they believe support the RICO harboring predicate without clarifying why these allegations amount to harboring. *See* Pl's Resp. 15-16.

Defendants argue that Plaintiffs have failed to assert "facts regarding how Defendants allegedly 'encouraged or induced' illegal aliens to enter the United States." Def.'s Mot. 14. The facts Plaintiffs primarily rely on to show encouragement or inducement are allegations that Defendants hired illegal workers, traveled to Mexico to recruit employees, and Benitez made it known he wanted more workers to come from Mexico.[13] Relying on *Zavala v. Wal-Mart Stores*, 691 F.3d 527 (3d Cir. 2012), Defendants contend that these allegations fall short of establishing encouragement or inducement. Specifically, Defendants argue that Plaintiffs have not made the requisite showing "of facts alleging that illegal aliens would not or could not have resided in the United States without having been employed by Defendants." Def.'s Mot. (citing *Zavala*, 691 F.3d at 542). Plaintiffs counter that *Zavala* is inapplicable because no Fifth Circuit case adopts this stringent 'encouragement' standard, and even if it did, the encouragement here is more direct.

In *Zavala*, the plaintiffs alleged that Wal-Mart knowingly hired a cleaning contractor that hired illegal workers. 691 F.3d at 531. In support, the plaintiffs alleged "that contractors advertised for Wal-Mart cleaning jobs in the Czech Republic and elsewhere." *Id.* In reviewing these allegations, the Third Circuit noted that its standard for the RICO encourage/induce predicate requires the plaintiffs to show that "Wal-Mart engaged in an 'affirmative act that served as a catalyst for aliens to [unlawfully] reside in the United States . . . when they might not have otherwise.'" *Id.* at 542 (quoting *DelRio-Mocci v. Connolly Properties, Inc.*, 672 F.3d 241, 249 (3d Cir. 2012)). The court found the complaint failed to meet this standard in two respects. First, there were no allegations that the illegal aliens "would not or could not have resided in the United States without having been

---

[13] As before, Plaintiffs simply identify the allegations supporting this predicate act without explaining how the allegations actually satisfy the RICO encouraging predicate. Pl.'s Resp. 16.

employed by Wal-Mart." *Id.* Second, plaintiffs failed to show Wal-Mart took any affirmative steps that "incited aliens to remain in this country unlawfully. . . ." *Id.*

As Defendants point out, Plaintiffs have failed to explain why this Court should "simply disregard the Third Circuit's reasoning." Def.'s Rep. 9. Though Plaintiffs note that no Fifth Circuit case has applied *Zavala*'s standard, Pl.'s Resp. 17, they offer no alternative standard and no rationale for why the Court should not adhere to the Third Circuit's sound reasoning.[14] Accordingly, the Court finds *Zavala*'s standard applicable and concludes that the Complaint fails to satisfy its requirements.

As in *Zavala*, Plaintiffs' fail to allege that Defendants "engaged in an 'affirmative act that served as a catalyst for aliens to [unlawfully] reside in the United States. . .when they might not have otherwise.'" 691 F.3d at 542. In fact, most of Plaintiffs' allegations in support of the RICO encourage/induce predicate fail to rise to the level of the requisite affirmative acts of this nature addressed in *Zavala.* For example, the allegation that Benitez told undocumented employees that he wanted more Mexican workers is no stronger proof of an affirmative act of encouragement/inducement than was the allegation that Wal-Mart allegedly encouraged its contractor to hire illegal workers in *Zavala.*

Moreover, even the acts that might be considered affirmative acts of encouragement do not reasonably indicate that Defendants caused an illegal worker to reside in the United States when

---

[14] The Court is unaware of any Fifth Circuit case addressing the RICO encouraging predicate. Indeed, before thoroughly analyzing the cases addressing the RICO encourage/induce predicate, the court in *United States v. Henderson* noted that the caselaw here "is not extensive." 857 F. Supp. 2d 191, 204-208 (D. Mass. 2012) (concluding that the Third Circuit's approach is "most carefully tailored both to [the statute's] plain language and the canons of statutory construction").

- 16 -

they might not have otherwise. Hiring an unspecified number of illegal workers does not—standing alone— suggest any of these unidentified workers would not otherwise be in this country. Likewise, the allegation that "Defendants" traveled "to Mexico with the *purpose* of hiring *new workers*" is vague at best. Compl. ¶ 34 (emphasis added). This assertion does not indicate that the trip resulted in an illegal worker actually coming to this country or even that Defendants met with illegal workers and offered them jobs. From this single imprecise factual allegation, the Court cannot infer that an non-citizen was actually encouraged or induced to leave her home to illegally enter and reside in a foreign land. Accordingly, the Court concludes that the Plaintiffs fail to allege sufficient facts in their Complaint to satisfy the RICO encourage/induce predicate pleading standard.

### 4.    RICO Hiring Predicate: 8 U.S.C. § 1324(a)(3)(A)

The RICO hiring predicate falls under § 1324(a)(3)(A), which provides that "[a]ny person who, during any 12-month period, knowingly hires for employment at least 10 individuals with actual knowledge that the individuals are aliens described in subparagraph (B) shall be" subject to criminal penalties under the INA. 8 U.S.C. § 1324(a)(3)(A). Subparagraph (B) defines an "alien" as one who "(i) is an unauthorized alien" and who "(ii) has been *brought into* the United States in violation of" the INA. *Id.* § 1324(a)(3)(B) (emphasis added).

Defendants argue that the Complaint fails to allege that they actually knew the illegal workers were "brought into" this country illegally by a third party. Def.'s Mot. 17. Defendants contend that all allegations supporting this fact are too conclusory. *Id.* Defendants also point out that Plaintiffs fail to identify a 12-month time-frame and instead simply recite the minimum statutory requirements.

Plaintiffs respond that there are enough supporting facts to infer the violation occurred,

including Defendants' participation in the hiring process, recruiting trip to Mexico, and policies that harbored and concealed workers. Pl.'s Resp. 18–19. Plaintiffs further point out that the statute does not require any specific time-frame be alleged, but instead prohibits the hiring of ten or more illegal aliens in "any" twelve-month period. While a specific time-frame may not be required, the Court nonetheless finds that the allegations supporting the RICO hiring predicate are too conclusory to stand.

The "brought into" language of the RICO hiring predicates requires not only that the employer "know that it hired illegal aliens" but also that it know (at least generally) "how they made their way into the United States." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1294 (11th Cir. 2010). The requirement that employers know the aliens were "brought into" this country illegally is crucial, because it distinguishes § 1324(a)(3)(A) from § 1324(a)(1), "which does not contain [this requirement] and is not a RICO predicate act but otherwise is substantially similar." *Walters v. McMahen*, 684 F.3d 435 (4th Cir. 2012) (citing *Nichols v. Mahoney*, 608 F. Supp. 2d 526, 534–35 (S.D.N.Y. 2009)).

Here, Plaintiffs' recital of the RICO hiring predicate elements and conclusory allegation that "Defendants have actual knowledge that at least ten employees hired have been brought into the country illegally," Compl. ¶ 28, are not enough to establish a plausible claim. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). While the statute may not require allegations of a specific twelve-month period, Plaintiffs failure to allege any dates whatsoever deprives these "naked assertions" from any "'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Moreover, allegations that Defendants were involved in the hiring and recruiting process or set policies to harbor illegal

aliens they already hired do nothing more than create "the mere possibility" that Defendants actually knew illegal aliens were brought into the country illegally. *Id.* at 679. In fact, allegations that Defendants ran background checks and check other employment-related documents for new hires suggest Defendants were unaware of where the illegal workers came from. Therefore, the Court finds that Plaintiffs have failed to adequately allege the RICO hiring predicate.

In sum, with regard to pleading RICO predicate acts, the Court concludes that the Complaint fails to provide sufficient facts establishing the RICO encourage/induce predicate or the RICO hiring predicate. With the other two RICO predicate acts—transporting and hiring—sufficiently alleged, however, the minimum requirements of a "pattern of racketeering activity" have been satisfied. For reasons discussed below, the Court will allow Plaintiffs to amend the Complaint in an effort to overcome the deficiencies for the two inadequately plead RICO predicates.

C.     *RICO Conspiracy*

To establish their RICO conspiracy claim, Plaintiffs must show "(1) that two or more people agreed to commit a substantive RICO offense and (2) that [Defendants] knew of and agreed to the overall objective of the RICO offense." *Chaney v. Dreyfus Serv. Corp.,* 595 F.3d 219, 239 (5th Cir. 2010). At the pleading stage, this requires only that the complaint allege an agreement to commit the predicate acts necessary to establish a "pattern of racketeering activity." *See Abraham v. Singh*, 480 F.3d 351, 357 (5th Cir. 2007) ("Plaintiffs specifically alleged that the Defendants entered into an agreement and that each agreed to commit at least two predicate acts of racketeering. These allegations are specific enough to state a claim that the Defendants conspired to violate § 1962(c).").

Defendants argue that Plaintiffs only assert conclusory allegations of an agreement with no supporting facts. Def.'s Mot. 18. However, Plaintiffs are not required to plead specific circumstances

of an agreement. Plaintiffs' allegations of an agreement, along with its properly plead allegations that Defendant committed two predicate acts, are enough at this stage in the proceedings. The Court, therefore, concludes that the Complaint provides sufficient facts to establish a violation of 18 U.S.C. § 1962(d).

        D.     *RICO Standing*

As discussed before, to recover for Defendants' alleged violation of RICO § 1962, Plaintiffs must establish statutory standing[15] under 18 U.S.C. § 1964(c). RICO standing requires the plaintiff to show that "the defendant's predicate acts constitute both a factual and proximate cause of the plaintiff's alleged injury." *Whalen v. Carter*, 954 F.2d 1087, 1091 (5th Cir. 1992). RICO's proximate causation analysis is consistent with "common-law principles of proximate causation," which require "some direct relation between the injury asserted and the injurious conduct alleged." *Holmes*, 503 U.S. at 268. Even at the pleading stage, "the central question [a court] must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006). A RICO claim must be dismissed if it "rest[s] on an overly attenuated chain of inferences." *Zervas v. Faulkner*, 861 F.2d 823, 837 (5th Cir. 1988).

The injuries Plaintiffs allegedly suffered are depressed wages.[16] To show causation, the

---

[15] Plaintiffs mistakenly contend that Defendants' challenge their "constitutional standing," which is "more appropriately brought under Rule 12(b)(1)." Pl.'s Resp. 1 n.1. Defendants actually challenge Plaintiffs' statutory standing under RICO, relying primarily on a Supreme Court case that originated as a Rule 12(b)(6) challenge. *See Ideal Steel Supply Corp. v. Anza*, 373 F.3d 251, 254 (2d Cir. 2004) *rev'd in part, vacated in part,* 547 U.S. 451 (2006); *see also Maoi v. Aetna, Inc.*, 221 F.3d 472, 500 n.7 (3d Cir. 2000) ("[O]ur method of analysis in prior cases has been to consider issues of RICO and antitrust standing in the context of. . .Rule 12(b)(6). . . .").

[16] Since this is a purported class action, the only relevant injuries at this point are those of Plaintiffs Varela and Wiegert. *See Brown v. Protective Life Ins. Co.*, 353 F.3d 405, 407 (5th Cir. 2003) ("Brown, as the only named plaintiff in this RICO action, must allege that she was injured by predicate

Complaint alleges:

> 23.   Plaintiffs are paid substantially less than the market rate for their services. According to the North American Industry Classification System used by the Bureau of Labor Statistics and labor economists to classify average wages for employees in advertising and consulting services, Plaintiffs should be paid between $78,000 and $80,000. Here, Plaintiffs made between $26,000 and $46,000.

> 24.   This significant wage depression was caused by Defendants' use of illegal aliens. Defendants' transporting, harboring, encouraging entrance of, and hiring of illegal alines directly depresses wages because it allows Defendants to unlawfully expand the available labor pool, which decreases wages.

> 45.   [Defendants' RICO predicate acts] caus[e] wage depression within IMM and MIM because the violations result in the rightward expansion of the labor supply to unlawfully increase the pool of workers willing to work. When the supply of workers is increased, wages decrease. When supply is decreased, wages increase. Here, the unlawfully expanded workforce causes MIM and IMM to pay below market rates. In these circumstances, wage depression occurs regardless of whether or not an employee receives commissions.

Compl. ¶ 23, 24, 45.

Defendants argue that these allegations are too speculative and conclusory to satisfy the proximate cause standard set out by *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006). Plaintiffs counter that these circumstances are distinguishable from *Anza*. Pl.'s Resp. 4. Indeed, as Plaintiffs note, other courts have found proximate cause to exist in similar circumstances. For the reasons that follow, the Court finds that the Complaint's conclusory and vague allegations are not sufficient to satisfy the proximate causation standard set out in *Anza*.

In *Anza*, the Supreme Court addressed the proper proximate cause standard to apply when evaluating RICO standing at the motion to dismiss stage. The plaintiff in *Anza* sued its business competitor for allegedly conducting a RICO enterprise that defrauded the New York tax authority,

---

acts.").

allowing the defendant to lower prices below market rates and attract customers away from the plaintiffs. 547 U.S. at 454. The Court found dismissal warranted because the plaintiff's harm arose from "a set of actions (offering lower prices) entirely distinct from the alleged RICO violation (defrauding the State)." *Id.* at 458. To illustrate the attenuation, the Court considered the proximate cause "directness requirement's underlying premises." *Id.* The primary principle implicated was "the difficulty that can arise when a court attempts to ascertain the damages caused by some remote action." *Id.* In support, the Court reasoned that the defendant's actions (lowering prices) could be attributed to "any number of reasons unconnected to the asserted pattern of fraud," and the plaintiff's harm (lost sales) "could have resulted from factors other than" the defendant's lower prices. *Id.* The Court further explained that the attenuation could be seen by the "intricate, uncertain inquir[y]" that would go into calculating damages if the Court sustained the plaintiff's claim. *Id.* at 459–60.

Like in *Anza*, Plaintiffs' alleged harm arises from a set of actions (paying the U.S. citizen-employees low wages) distinct from the alleged RICO actions (transporting, harboring, encouraging/inducing entry, and hiring illegal workers). The disconnect here may be distinguishable, but the attenuation is apparent for the same reasons expressed in *Anza*.

First, the Complaint's vague and conclusory allegations fail to plausibly show that Plaintiffs' harm is attributable to Defendants' RICO violations rather than any number of unrelated factors. The chain of causation involves Defendants' RICO violations causing an expansion of the labor pool, causing Defendants to pay lower wages. To begin, Defendants' alleged expansion of the labor pool is not a RICO violation, and is not necessarily attributable to Defendants' alleged transporting,

harboring, encouraging the entrance of, and hiring illegal workers.[17] Moreover, Defendants may pay less than national averages for "employees in advertising and consulting services," Compl. ¶ 23, for any number of reasons unrelated to the RICO violations, such as geographical differences in pay, varied levels of skill and education, and demand for employees in that particular labor market. In short, the Complaint's vague and conclusory allegations leave too many reasonable alternatives for the Court to find a plausible connection between Defendants' RICO violations and Plaintiffs' harm.

Second, the Complaint sets up the sort of "intricate, uncertain inquiry" warned of in *Anza*. With the vague and conclusory allegations discussed above, the Court would be left with an intricate and uncertain calculation to sort through. To compound matters, the Complaint defines the class of employees to include individuals working in different positions (merchandiser and sales representative) with different pay structures (wages versus commission and wage). Not only could these employees face different labor market pressures, they may be affected differently by Defendants' alleged use of illegal workers.[18] Another complication is the fact that Plaintiffs are in sales where the compensation it takes to attract an employee with a portfolio of clients may be as high as the compensation it would take to attract ten entry-level employees. It may be possible for Plaintiffs to overcome the uncertainty that stems from these complications, but at present, the Complaint presents a causal chain that is too attenuated.

---

[17] Simply hiring illegal workers, for example, is not a RICO violation. Unlike cases Plaintiffs rely on (discussed below), there are no allegations of a widespread scheme of illegal worker importing and hiring that would make the allegation of labor pool expansion more plausible.

[18] Varela is a sales representative and Wiegert is a merchandiser, while the illegal workers were hired "as supervisors, sales representatives, and in the warehouse." Compl. ¶ 25. If more illegal workers are available or hired as sales representatives, Varela would seemingly face a larger wage depression than Wiegert. The wage depression may not even be measureable if all but a couple illegal aliens are hired in the warehouse, a position neither Plaintiff works in.

The cases Plaintiffs cite in support of their economic theory of causation are unpersuasive. As an initial matter, not all cases addressing proximate causation in similar circumstances favor Plaintiffs.[19] Of those cases that do favor Plaintiffs, none are binding on this Court and almost all of them were issued before *Anza, Twombly,* and *Iqbal.*[20] Most importantly, each case Plaintiffs cite in support is distinguishable for at least three reasons. First, each court noted the widespread nature of the schemes, involving hundreds or even thousands of illegal workers.[21] But here, the only indication of the size of Defendants' scheme comes from the allegation tracing the RICO hiring predicate's statutory language. *See* Compl. ¶ 43 ("[Defendants] hired for employment at least ten [illegal workers] in a twelve month period."). Second, unlike in the prior cases where each defendant-employer allegedly held substantial power over their respective labor markets,[22] Plaintiffs provide no

---

[19] *See, e.g., Simpson v. Sanderson Farms, Inc.,* No. 12-cv-28, 2013 WL 443620, at *5 (M.D. Ga. 2013) ("Perhaps it is time for the Eleventh Circuit to revisit *Mohawk II* in light of *Twombly* and *Iqbal.* But that is not for this Court to say. What the Court can say is that in its opinion, Plaintiffs' amended complaint cannot survive the motions to dismiss because it fails to allege sufficient facts to show that the [RICO] violations proximately caused depressed wages."); *Baker v. IBP, Inc.,* 357 F.3d 685, 692 (7th Cir. 2004) (disagreeing in dicta with the Ninth Circuit's holding in *Mendoza v. Zirkle Fruit Co*).

[20] Two of the four cases Plaintiffs rely on were decided before *Anza. See Mendoza v. Zirkle Fruit Co.,* 301 F.3d 1163 (9th Cir. 2002); *Trollinger v. Tyson Foods, Inc.,* 370 F.3d 602 (6th Cir. 2004). One was decided after *Anza,* but before *Twombly. See Williams v. Mohawk Indus., Inc.,* 465 F.3d 1277 (11th Cir. 2006). The fourth and final case was decided before *Iqbal. See Cunningham v. Offshore Specialty Fabrications, Inc.,* 543 F. Supp. 2d 614 (E.D. Tex. 2008).

[21] *Mohawk,* 465 F.3d at 1288 ("Mohawk's conduct has grossly distorted those normal market forces by employing literally *thousands* of illegal, undocumented aliens."); *Cunningham,* 543 F. Supp. 2d at 639 ("Defendants harbored and knowingly employed thousands of illegal workers."); *Trollinger,* 370 F.3d at 606 ("[T]he complaint alleges, over half of the workers at 15 of Tyson's facilities are illegal immigrants."); *Mendoza,* 301 F.3d at 1167 ("[A]s much as half the [defendants'] workforce is employed illegally, and the [defendants] have been targeted for raids and other law enforcement procedures.").

[22] *Mohawk,* 465 F.3d at 1281 ("Mohawk is the second largest carpet and rug manufacturer in the United States and has over 30,000 employees."); *Cunningham,* 543 F. Supp. 2d at 620–21 ("Service Defendants employ thousands of workers in projects and are the dominant source of demand for the offshore labor market on the OCS."); *Trollinger,* 370 F.3d at 606 ("One of the nation's largest poultry

- 24 -

allegations suggesting Defendants hold labor market power. Third and finally, Plaintiffs provide a broader and more vaguely-defined labor market than the narrowly defined labor markets alleged in prior cases.[23] For example, the Complaint never indicates the exact geographic location in which this labor market may be, but instead defines the benchmark at which Plaintiffs "should be paid" on a national scale. *Id.* ¶ 23. Moreover, Plaintiffs broadly include all employees in "advertising and consulting services" within the labor market, even though low-level employees in the USA Hispanic Market surely face different labor market pressure than top-level executives at a national advertising firm. Simply put, Plaintiffs have not alleged the "particular factual circumstances" that other cases have found sufficient to satisfy "the direct relationship requirement imposed by" *Anza*. *Mohawk*, 465 F.3d at 1290.

In sum, the Court finds that Plaintiffs fails to adequately plead proximate causation, and therefore fails to establish RICO standing for both of its RICO claims.

## IV.

## CONCLUSION

For the foregoing reasons, the Court finds that Plaintiffs' First Amended Complaint (doc. 20)

---

processors, Tyson Foods, Inc. employs more than 120,000 workers."); *Mendoza*, 301 F.3d at 1171 ("[The Complaint] makes clear that the scheme involves fruit growers that comprise a large percentage of fruit orchards and packing houses in the area, and therefore affect wages throughout the labor market.").

[23] *Mohawk*, 465 F.3d at 1289 ("[The] complaint focuses on only what is happening in the particular narrow labor market that Mohawk dominates in north Georgia."); *Cunningham*, 543 F. Supp. 2d at 639 ("Plaintiffs are alleging depressed wages among ten defendants all recruiting on the limited geographical region of the OCS."); *Trollinger*, 370 F.3d 606 ("Tyson [paid] its legal employees wages substantially below the wage level paid by other employers of unskilled labor in the areas surrounding the 15 facilities."); *Mendoza*, 301 F.3d at 1166 ("[Plaintiffs] are agricultural laborers for [defendants], which operate fruit orchards and packing houses in Eastern Washington, the heart of Washington's fruit industry.").

does not state a claim for violations of 18 U.S.C. § 1962(c) and § 1962(d). As such, Defendants' Motion to Dismiss (doc. 22) is **GRANTED**, and Plaintiffs' First Amended Complaint is hereby **DISMISSED WITHOUT PREJUDICE**.

The Court will afford a plaintiff the opportunity to overcome pleading deficiencies, unless it appears certain that such re-pleading would be futile. *See Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) ("[A] court ordinarily should not dismiss the complaint except after affording every opportunity for the plaintiff to state a claim upon which relief can be granted."). Since this Order is the Court's first review of Plaintiffs' allegations, the Court concludes that Plaintiffs should be given the opportunity to overcome the deficiencies noted herein.

If Plaintiffs are able to replead and overcome the grounds for dismissal stated herein, they should do so by no later than thirty (30) days from the date of this Order. Further, any repleading shall be accompanied by a synopsis of no more than ten (10) pages, explaining how the amendments overcome the grounds stated for dismissal in this Order. Should Plaintiffs replead, Defendants are hereby granted leave to file responses to Plaintiffs' synopsis. Any response shall not exceed ten (10) pages and must be filed within fourteen (14) calender days of the repleading. No further briefing will be permitted.

SO ORDERED

SIGNED: October 17, 2013.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

- 26 -