UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JAIME VARELA and YESICA WIEGERT, individually and on behalf of similarly situated individuals, <br><br> Plaintiffs, <br><br> v. <br><br> DAVID BENITEZ GONZALES, ANA CRISTINA BENITEZ, INTELLIGENT MEXICAN MARKETING, INC., and MARKETING AND INVENTORY MANAGEMENT, LLC, <br><br> Defendants. | § § § § § § § § § § § § § § § § § § § <br><br> CIVIL ACTION NO. 3:13-CV-1278-B |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Jaime Varela ("Varela") and Yesica Wiegert ("Wiegert") seek to replead their Racketeering Influenced and Corrupt Organization Act ("RICO") claims following dismissal under Fed. R. Civ. P. 12(b)(6). In its Memorandum Opinion and Order issued October 17, 2013 ("October 17 Order"),[1] the Court permitted Plaintiffs to replead their claims to overcome the pleading deficiencies identified in its Order. Having now reviewed Plaintiffs' proposed amended pleadings, the Court finds that Plaintiffs have again failed to adequately plead proximate causation to establish RICO standing, the Court **DISMISSES WITH PREJUDICE** Plaintiffs' SAC (doc. 35) and **DENIES** Plaintiffs' Motion for Leave to Amend Complaint (doc. 40).

---

[1] Mem. Op., Doc. 34, *available at* 2013 WL 5658606.

I.

BACKGROUND

The facts in this case were recounted in detail in the Court's October 17 Order. To summarize, Plaintiffs allege that the companies they worked for—Intelligent Mexican Marketing, Inc. ("IMM") and Marketing and Inventory Management, LLC ("MIM")—along with the individuals who jointly run these companies—IMM's President David Benitez Gonzales and MIM's President Ana Cristina Benitez—engaged, and conspired to engage, in a criminal enterprise aimed at transporting, harboring, encouraging the unlawful entrance of, and hiring illegal workers in violation of RICO, 18 U.S.C. §§ 1962(c) and (d).[2] Plaintiffs, who include a former sale representative (Varela) and merchandiser (Wiegert) for IMM/MIM's joint organization, claim that Defendants' RICO violations caused them to receive depressed wages. In other words, the RICO violations Defendants' purportedly committed allowed them to unlawfully expand the pool of workers, which in turn allegedly caused Plaintiffs—who are authorized to work in this country—to be paid lower wages.

Based on the foregoing, Plaintiffs filed a complaint (doc. 1) on March 27, 2013 on behalf of themselves and others similarly situated. Shortly thereafter, Plaintiffs moved (unopposed) to amend and filed their First Amended Complaint ("FAC") (doc. 20). On June 21, 2013, Defendants filed a motion to dismiss (doc. 22) pursuant to Federal Rule of Civil Procedure 12(b)(6).

On October 17, 2013, the Court granted Defendants' motion and dismissed without

---

[2] *See* 18 U.S.C. § 1962(c) (prohibiting "enterprise[s] engaged in . . . a pattern of racketeering activity," which includes violations of certain provisions of the Immigration and Nationality Act ("INA")); *id.* § 1962(d) (prohibiting a conspiracy to violate § 1962(a), (b) or (c)).

prejudice Plaintiffs' FAC. Though the Court found dismissal warranted based on Plaintiffs' failure to properly allege RICO standing, the October 17 Order went on to address the other pleading deficiencies raised by Defendants. The Court rejected the first ground raised by Defendants, finding that the FAC plausibly alleged the RICO enterprise element.[3] Next, the Court addressed Defendants attack on the sufficiency of the RICO predicate act allegations, and concluded that two had been adequately pled (RICO transporting and harboring predicates) and two had not been adequately pled (RICO encourage/induce and hiring predicates). Since Plaintiffs only had to establish two RICO predicate acts,[4] these pleading deficiencies did not warrant dismissal. Similarly, the October 17 Order refused to dismiss the FAC's RICO conspiracy claim after finding that the FAC's conspiracy allegations were sufficient.

The Court did, however, agree with Defendants that dismissal was warranted in light of the FAC's implausible RICO standing allegations. As discussed in the October 17 Order, for both of their RICO claims, Plaintiffs must establish standing to sue under RICO's civil enforcement provision, 18 U.S.C. § 1964(c). This, in turn, requires Plaintiffs to show that Defendants' "predicate acts constitute both a factual and proximate cause of the plaintiff's alleged injury." *Whalen v. Carter*,

---

[3] As a reminder, "[t]o establish a prima facie civil RICO claim, a plaintiff must allege: (1) a substantive predicate violation of 18 U.S.C. § 1962; (2) injury to his business or property; and (3) a causal connection between the racketeering activity and the injury." *Simpson v. Sanderson Farms, Inc.*, No. 12-cv-28, 2012 WL 4049435 at *3 (M.D. Ga. Sept. 13, 2012) (citing *Avigan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991)). For the first prong—a § 1962 violation—a plaintiff must adequately plead "three common elements: (1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise." *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007) (quotation marks omitted)

[4] Defendants did not challenge whether the predicate acts constituted a "pattern," and as such, the Court limited its analysis to the question of whether Plaintiffs satisfied the minimum statutory requirement of establishing "at least two" RICO predicates.

954 F.2d 1087, 1091 (5th Cir. 1992). The FAC fell short of this requirement by failing to plausibly allege proximate causation. To elaborate, the Court concluded that the FAC's two-step chain of causation was too indirect or attenuated to satisfy proximate causation as defined in the RICO standing context, and as such, the Court dismissed without prejudice both of Plaintiffs' claims.

After dismissing the FAC's claims without prejudice, the Court instructed that "[i]f Plaintiffs are able to replead and overcome the grounds for dismissal stated herein, they should do so" within thirty days by filing an amended complaint along with a synopsis "explaining how the amendments overcome the grounds stated for dismissal." Mem. Op. 26. Plaintiffs did so on November 14, 2013 by filing a Second Amended Complaint ("SAC") (doc. 35) along with a synopsis (doc. 36), to which Defendants later responded (doc. 37) in accordance with the October 17 Order.

With this matter still pending, Plaintiffs filed a Second Motion for Leave (doc. 40) to file a Third Amended Complaint("TAC") based on facts Plaintiffs apparently learned regarding Defendants' off-the-books employment of illegal workers.[5] The TAC's new allegations are primarily relevant to the RICO predicate acts in this case, and add nothing of moment to the SAC's allegations concerning RICO standing—the dispositive issue at hand. Thus, since the TAC and SAC are substantively identical in terms of their RICO standing allegations, the Court, for ease of reference, will cite exclusively to the SAC in its analysis that follows.

---

[5] *See* Second Mot. Leave 2 ("Specifically, Plaintiffs have learned that Defendants knowingly employ undocumented workers off the books. These workers do not have legal papers to work in the United States. Defendants, aware of these employees' legal status, intentionally do not place these employees on the payroll. Instead, Defendants pay these employees cash at a flat weekly rate with no commissions. These undocumented workers are hired to perform the same job duties as Plaintiff Jaime Varela performed, who was a sales representative.").

**II.**

**ANALYSIS**

The precise issue before the Court is whether Plaintiffs' SAC cures the RICO standing deficiencies that led the Court to dismiss Plaintiffs' FAC. Plaintiffs, in their Synopsis, claim the SAC does just that, first, by attaching, incorporating, and referencing an expert report from Dr. Nathan Berg that analyzes the causal chain at issue in this case, and second, by adding allegations showing that Defendants' RICO violations were a proximate cause of Plaintiffs' depressed wages. Pl.'s Synopsis 2, 6. Plaintiffs also contend that new factual allegations in the amendments overcome the pleading deficiencies related to the RICO encourage/induce and hiring predicates. *Id.* at 3-6. Since the Court concludes, as detailed below, that Plaintiffs' repleadings fail to plausibly allege proximate cause, the Court limits the discussion that follows to Plaintiffs' RICO standing allegations.

    A.    *The October 17 Order's RICO Standing Analysis*

As mentioned above, Plaintiffs' RICO claims require them to plausibly allege their standing to sue under RICO, which in turn, means that Plaintiffs must establish that Defendants' "predicate acts"—here, Defendants' INA violations, including harboring, transporting, encouraging the entrance of, and hiring illegal workers—"constitute both a factual and proximate cause of the plaintiff's alleged injury." *Whalen*, 954 F.2d at 1091. The issue in this case, as discussed in the October 17 Order, is whether RICO's proximate cause requirement has been adequately alleged. Supreme Court "precedents make clear that in the RICO context, the focus" of the proximate cause analysis "is on the directness of the relationship between the conduct and the harm." *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010) (citing *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258 (1992) and *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006)). Thus, to establish RICO

standing, Plaintiffs must show "some direct relation between the injury asserted and the injurious conduct alleged." *Holmes*, 503 U.S. at 268. Where the "link" between the alleged injury and predicate acts "is too remote, purely contingent, or indirect," the RICO claim should be dismissed. *Hemi Grp.*, 503 U.S. at 9 (citing *Holmes*, 503 U.S. at 268) (brackets and quotes omitted).

In finding proximate cause lacking, the October 17 Order began with a detailed review of the Supreme Court's controlling opinion in *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006). To briefly summarize, *Anza* found dismissal of a civil RICO complaint warranted based on the plaintiff's failure to adequately allege proximate causation. The Court in *Anza* concluded that the chain of causation alleged was too indirect or attenuated; it reasoned that plaintiff's harm arose from "a set of actions (offering lower prices) entirely distinct from the alleged RICO violation (defrauding the State)." *Id.* at 458. In illustrating the attenuation, the Supreme Court considered the proximate cause "directness requirement's underlying premises," the primary principle being "the difficulty that can arise when a court attempts to ascertain the damages caused by some remote action," which forces it to distinguish between various independent causes. *Id. Anza* further explained that the attenuation could be seen by the "intricate, uncertain inquir[y]" that would go into calculating damages if plaintiff's claim was sustained. *Id.* at 459–60.

Applying *Anza* in its October 17 Order, the Court concluded that "Plaintiffs' alleged harm arises from a set of actions (paying the U.S. citizen-employees low wages) distinct from the alleged RICO actions (transporting, harboring, encouraging/inducing entry, and hiring illegal workers)." Mem. Op. 22. To illustrate this attenuation, the Court looked to two of the "directness requirement's

underlying premises."[6]

First, the Court found that Plaintiffs' theory involved a <u>two-step chain of causation</u> (RICO violations—labor pool expansion—depressed wages) that failed to account for causes unrelated to the RICO violations. The Court reasoned that at step one, the alleged <u>labor pool expansion could be attributed to actions unrelated</u> to the RICO predicate acts, and for step two, the FAC's <u>broad and</u> unwieldy labor pool definition failed to account for various independent causes that could alternatively explain why Plaintiffs' wages were below the average salary of workers in the alleged labor pool.

Second, the Court also found that "the Complaint sets up the sort of 'intricate, uncertain inquiry' warned of in *Anza*." *Id.* at 23. The Court highlighted the complications stemming from the vague labor market allegations discussed before, which were compounded by the fact that Plaintiffs <u>worked in different positions with different compensation schemes</u> and yet lumped themselves into the same legal worker labor pool that apparently suffered the same degree of wage depression. Further complicating matters, the Court noted that Plaintiffs <u>worked in sales</u> where the value of an employee's services is less quantifiable than, for example, an employee in manufacturing.

Lastly, the Court was unpersuaded by the factually similar cases Plaintiffs relied on. In addition to noting that these non-binding cases came before significant Supreme Court decisions,

---

[6] Note that the October 17 Order did not address other proximate causation premises discussed in *Anza*, such as the availability of a more directly-harmed victim. In this context, and depending on the particular facts presented, this premise could potentially go either way if one considers the defendant's business competitor or the government to be alternative victims of the RICO predicate acts. Nonetheless, this is merely a "premise" that may not be present even though proximate causation is not satisfied. *See, e.g.*, *Jackson v. Nat'l Ass'n for Advancement of Colored People*, — Fed. Appx. — 2013 WL 5530576, at *5 (5th Cir. Oct. 8, 2013) (unpublished) ("Notwithstanding the lack of an appreciable risk of multiple recoveries, these underlying premises illustrate why Jackson's alleged injury was not a direct result of the alleged RICO violation.").

the Court found them factually <u>distinguishable for at least three reasons</u>: a lack of allegations of a widespread illegal worker hiring scheme, no allegations suggesting Defendants hold market power over the labor pool at issue, and allegations of a broad and vague—rather than narrowly-tailored—labor market.

One additional aspect of the October 17 Order bears mention. Before reaching the RICO standing analysis, the October 17 Order briefly noted that no consideration was given to Dr. Nathan Berg's Expert Report, which Plaintiffs attempted to introduce in the appendix of their response to Defendants' Motion to Dismiss. The Court summarily concluded that the newly-introduced Expert Report did not fall into any of the categories of material courts generally consider in ruling on a Rule 12(b)(6) motion,[7] and as such, the Court "decline[d] to consider it in its analysis." *Id.* at 4 n.5.

B.   *Analysis of Amended RICO Standing Allegations*

In light of the above discussion, the Court's task here is to examine Plaintiffs' amendments and determine whether the allegations now "contain sufficient factual matter, accepted as true, to" plausibly demonstrate proximate causation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As always, the Court is not bound to "accept as true" conclusory allegations; such allegations "can provide the framework of a complaint, [but] they must be supported by factual allegations." *Id.* at 678-79.

A review of the SAC's allegations reveals the following. First, three paragraphs in the SAC are nearly identical to the three proximate causation paragraphs set out in the October 17 Order.[8]

---

[7] *See* Mem. Op. 4-5 ("In ruling on a Rule 12(b)(6) motion, the Court may generally 'rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'") (quoting *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011)).

[8] *Compare* Mem. Op. 21 (quoting FAC ¶¶ 23, 24, 45), *with* SAC ¶¶ 22, 23, 66. Note, paragraph twenty-two of the SAC contains one slight change discussed below—rather than define the "average

Second, the Court can discern just three *factual* changes between the amendments and the FAC that are arguably relevant to proximate causation: (i) Wiegert, though "hired as a 'merchandiser,'" allegedly "functioned as a sales representative," which means she served in functionally the same position as Varela, SAC ¶ 19; (ii) the "average wage" Plaintiffs allegedly should have been paid—and thus, the relevant labor pool they allegedly fell within—is no longer defined on a national scale, rather the SAC limits it to the Dallas and Houston areas, *id.* ¶ 22; and (iii) certain RICO predicate acts are more precisely worded and have stronger supporting factual allegations than before. Finally, the most apparent addition to the SAC are the following conclusory allegations, supported explicitly or implicitly by Dr. Berg's expert report:

> 24. According to Dr. Nathan Berg, whose expert report is attached as Exhibit 1, the employment of only ten undocumented workers out of 100 workers would cause a direct and noticeable depressive effect on each documented worker's wage.
>
> 25. Depressed wages necessarily occur as a direct result of the expansion of the labor pool by the use of legal and illegal workers. *See* Exhibit 1 at 10 ("If the illegal workers were not part of the pool of potential workers, then the firm would have to raise wages it pays to attract the desired quantity of workers.").
>
> 26. This depressive effect occurs regardless of the market or industry power of the employer because the effect occurs based on the number of people competing for jobs and their willingness to accept less than market rate.
>
> 27. The dollar amount of the depression caused by the use of undocumented workers can be calculated with reasonable precision.
>
> 28. The best conservative estimate of the direct effect of the employment of ten undocumented workers out of one hundred workers is a loss between $8,455 and $14,959 per worker, per year. Exhibit 1 at 5, 12.
>
> 29. According to other estimates in Dr. Berg's report, the lost wages per worker, per year

---

wage" Plaintiffs should be paid on a national scale, the SAC provide the "average wage" for Dallas and Houston.

>could be as high as $30,976.

*Id.* ¶¶ 24-29. As discussed below, these "new" allegations fall short of addressing the proximate causation deficiencies that led to the FAC's dismissal.

To begin, Plaintiffs' amendments contain nearly the same proximate cause *factual* allegations as before. The SAC again relies on a two-step chain of causation. Though some of the alleged RICO predicate acts are more carefully worded, the SAC does not assert any new facts that tie these allegations closer to the labor pool expansion the RICO predicates purportedly caused. And while Plaintiffs narrowed the geographic scope of the labor pool (from nationally-based to the Dallas and Houston areas), it remains broad and unwieldy. To illustrate, since Plaintiffs retained the amorphous category of "advertising and sales," the labor pool now includes any employee in the "advertising and consulting" industry who lives in one of the two major metropolitan areas alleged (Dallas and Houston). Thus, Plaintiffs, as low-level sales employees in the USA Hispanic market, purportedly face the same labor market pressures as a high-level sales executive who lends his services to the oil and gas industry. Another ineffectual change is the SAC's allegation that both Plaintiffs functioned as sales representatives while serving in nominally different positions—Plaintiffs still differ in compensation structure (salary versus commission plus salary) and total pay according to the SAC, and seem to face varying levels of competition from illegal workers across their two different positions.[9] Finally, Plaintiffs do not introduce any new legal authority to support their position, and

---

[9] For example, in their Motion for Leave to Amend, Plaintiffs seek to add allegations that Defendants knowingly hired undocumented workers off the books "to perform the same job duties as Plaintiff Jamie Varela performed, who was a sales representative." Pl.'s Mot. for Leave 2. There is no indication these workers were hired in place of someone who could serve in Plaintiff Wiegert's position as merchandiser. This further shows that Wiegert and Varela likely experienced unequal levels of unlawful labor pool expansion, even though the SAC makes no distinction between the RICO predicate acts' alleged effect on sales representatives' and merchandisers' wages.

the non-binding cases they previously relied on remain factually distinguishable as Plaintiffs again lack allegations of a widespread illegal worker scheme, fail to suggest Defendants hold any power over the labor pool, and define the labor pool nearly as broad as before.

Rather than attempt to re-define or clarify the context of their implausible proximate causation allegations, Plaintiffs rely almost entirely on their conclusory allegations, set out above, unsupported by any new factual allegations. Plaintiffs' view appears to be that the Court must accept these conclusory allegations because they are based (either directly or indirectly) on Dr. Berg's expert report. Dr. Berg—who is presumably an economist, though his qualifications are never mentioned—covers the following in his report: the statistical measure of the average wage for Dallas-based employees in advertising and consulting, the general economic theory of causation in this case, relevant economic research on wage depression, and the results from his economic model in which Dr. Berg finds, after making a number of assumptions, that if Defendants theoretically hired ten undocumented workers out of 100 workers in total, Plaintiffs' wages would be depressed in quantifiable amounts detailed in his report. For the reasons that follow, Plaintiffs' reliance on the expert report cannot salvage its insufficient proximate cause allegations.

As an initial matter, Defendants are correct that it would be inappropriate for the Court to even consider the expert report, since Plaintiffs use it entirely for Dr. Berg's opinion contained therein.[10] Defendants first argue that the expert report should not be considered because it is not a

---

[10] *See Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 285 (5th Cir. 2006) (finding the district court did not abuse discretion in refusing "to consider the expert's conclusions (opinions)" while still considering "nonconclusory, factual portions" of the expert's affidavit).

"written instrument" under Federal Rule of Civil Procedure 10(c).[11] Def.'s Resp. 2-3. Regardless of whether Defendants are correct on this point, the Court concurs with their next argument that applicable case authority provides that an expert report should not be considered where, as here, the report is used "merely [as] a piece of evidentiary matter that does not exist independently of the complaint." *DeMarco v. DepoTech Corp.*, 149 F. Supp. 2d 1212, 1220 (S.D. Cal. 2001). Plaintiffs do not rely on the expert report for any facts contained therein. Rather, they cite the expert report for Dr. Berg's opinion that Defendants' actions directly caused Plaintiffs' depressed wages, his opinion that the effect occurs even if certain factors are present, and the estimated depressed wages Plaintiffs would suffer under Dr. Berg's theoretical causation model.[12] If the Court were to consider Dr. Berg's opinion for these purposes, it would be forced to "'confront . . . complex evidentiary issues" and "rule on the expert's qualifications," which "would be inappropriate at the pleading stage." *Fin. Acquisition Partners*, 440 F.3d at 285-86 (citing *DeMarco*, 149 F. Supp. 2d at 1221).

Assuming *arguendo*, Dr. Berg's report could be considered, Plaintiffs' allegations of proximate causation still fall short. The portions of Dr. Berg's report that Plaintiffs rely upon do not even address the issue of proximate causation, which in contrast to "but for" or factual causation, is a "*term*" that serves as "shorthand for a [judicial] concept: Injuries have countless causes, and not all should give rise to legal liability." *CSX Transp., Inc. v. McBride*, 131 S. Ct. 2630, 2637 (2011). For example, Plaintiffs argue that the report "addresses the Court's concern that wage depression *might*

---

[11] Rule 10(c) provides in relevant part that "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." FED. R. CIV. P. 10(c).

[12] *See* SAC ¶¶ 24-29 (stating conclusions and results drawn from Dr. Berg's report); *see also* Pl.'s Synopsis 7-9 (citing Dr. Berg's report to show "direct" causation and to address Court's concerns about complications in the proximate causation analysis).

*not occur* if only a relatively small number of undocumented workers were hired and if the company did not have substantial power over its respective labor markets." Pl.'s Synopsis 8 (emphasis added). But the Court, in its October 17 Order, was not worried that the alleged harm "might not occur" in these circumstances; that would be an issue of "but for" causation. Instead, the Court's "concern" was that the causal chain set out in the FAC was too indirect or attenuated under the Supreme Court's definition of "proximate cause." While illustrating this point, the Court pointed to certain factors—such the lack of a widespread scheme and an employer without any known power over the relevant labor market—that further confounded the causation determination.

Rather than opine that these factors are less of an issue in these particular circumstances, or show that the causal chain is more direct than the Court previously determined, Dr. Berg's expert report simply assumes the confounding variables away while building a model to "estimate" the damages Plaintiffs would suffer if Defendants hypothetically hired ten undocumented workers out of 100 workers in total. In fact, Dr. Berg does not even consider the actual causal chain Plaintiffs must ultimately prove—whether Defendants' RICO violations (not simply their hiring of undocumented workers) caused Plaintiffs' depressed wages. And the fact that Dr. Berg can generate such an estimate at all does not indicate the Court was incorrect to find proximate causation lacking under the facts alleged. After all, *Anza* found proximate causation to be improperly pled, even though "reports submitted by [plaintiff's] expert" purportedly showed that plaintiff's harm was "directly" caused by defendants' "scheme." Brief of Respondent, *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006), 2006 WL 448207, at *25.

In sum, Plaintiffs' repleadings on the issue of RICO standing is nearly identical to the FAC in terms of the relevant "factual matter" presented. By relying almost entirely on unpersuasive

conclusions drawn from Dr. Berg's economic opinion concerning the general theory of causation in this case, Plaintiffs have fallen well short of overcoming the proximate causation deficiencies stated in the Court's October 17 Order. As such, the Court concludes, as it did before, that Plaintiffs have failed to plausibly allege proximate causation for purposes of RICO standing.

## IV.

## CONCLUSION

For the above reasons, the Court finds that Plaintiffs' Second Amended Complaint (doc. 35) and Third Amended Complaint (doc. 40) fail to overcome the RICO standing deficiencies that led the Court to dismiss the First Amended Complaint (doc. 20) on October 17, 2013 (doc. 34).

As mentioned in the October 17 Order, federal policy dictates that cases should be decided "on the basis of the substantive rights involved rather than on technicalities," and as such, plaintiffs must be given a fair opportunity to state a claim. 5B Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 1357 (3d ed. 2004). That said, a district court has the discretion to deny plaintiffs an opportunity to replead based on, among other things, "'[plaintiff's] repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment.'" *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 608 (5th Cir. 1998) (quoting *In re Southmark Corp.*, 88 F.3d 311, 314-15 (5th Cir.1996)).

Plaintiffs in this case have been permitted to amend their complaint three times now. Two of Plaintiffs' amendments were filed after the Court thoroughly discussed the implausibility of Plaintiffs' RICO standing allegations. As discussed above, Plaintiffs' amendments have done very little to address the RICO standing deficiencies detailed in the October 17 Order. Their reliance on conclusory allegations and an economic expert's report suggests Plaintiffs simply do not have the facts

necessary to properly allege proximate causation. Defendants should not be further subjected to the costs of defending against such futile efforts. Accordingly, the Court finds dismissal with prejudice, and denial of leave, to be warranted in these circumstances.[13]

Based on the foregoing, the Court **DISMISSES WITH PREJUDICE** Plaintiffs' RICO claim under 18 U.S.C. § 1962(c) and their RICO conspiracy claim under 18 U.S.C. § 1962(d). The Court also **DENIES** Plaintiffs' Motion for Leave to Amend Complaint (doc. 40). The Court will issue a separate Final Judgment after issuance of this order.

**SO ORDERED**

**SIGNED: March 31, 2014.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

---

[13] *See, e.g., St. Germain v. Howard*, 556 F.3d 261, 264 (5th Cir. 2009) (upholding dismissal with prejudice of plaintiffs' RICO claims and denial of leave to amend in light of the fact that plaintiffs "had several opportunities to state their best case").